HEYWOOD HOLDEN, PROSECUTOR, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF NORTH ARLINGTON, COUNTY OF BERGEN, STATE OF NEW JERSEY, ET AL., RESPONDENTS.

Argued October term, 1932—Decided December 19, 1932.

Before Justices PARKER and LLOYD.

For the prosecutor, *Bruck & Bigel.*

For the respondents, *Breslin & Breslin, John Milton* and *Charles L. Hedden.*

PER CURIAM.

The writ in this case was issued to test (1) the validity of certain contracts made by the borough of North Arlington with the owners of property situate in that borough for the construction of sewers on the lands of the owners; (2) the validity of a resolution of the mayor and council of the borough on the 4th of March, 1932, pertaining to the acceptance of the sewers constructed under these contracts; (3) certain other resolutions similarly adopted, setting forth the value of such construction and requesting the owners to accept the amounts specified in the resolutions in satisfaction of the agreements above referred to; (4) an ordinance adopted by the same authorities June 28th, 1932, for the issuance of bonds in the sum of $152,000 to raise moneys to pay the amounts due on the sewer contracts between the borough and such owners.

As would be inferred from the foregoing recital the several contracts were entered into and the sewers were constructed. By the resolution adopted March 4th, 1932, it was resolved that the sewers be accepted; that proper steps be taken to ascertain their reasonable cost and value and requesting the passage by the legislature of legislation authorizing the borough to take the necessary steps to legally obligate the borough. The legislation was sought and was enacted in chapter 163 of the laws of 1932, page 289.

Various reasons are urged for setting aside the contracts, the various resolutions and the ordinance. It is said that the contracts themselves were beyond the power of the borough to make and this is clearly so, but respondents claim that they were validated by the legislation subsequently enacted. It is said that the act itself is unconstitutional; that in any event it does not validate the contracts and finally that the terms of the act for the performance of which only could the borough justify the passage of the resolution of March 4th, 1932, or the ordinance for the issuance of bonds, were not complied with in that the value of the work has never been certified by the municipal engineer.

We think it unnecessary to discuss any of the reasons urged except the last. The validating act in its first section reads as follows:

"All agreements heretofore entered into by any municipality with landowners for the construction of lateral or connecting sewers, whereby the municipality agrees to pay to the said landowners the reasonable value thereof as of the time of the incorporation of the said lateral or connecting system with the general sanitary system installed in said municipality, shall be valid and binding upon the said municipality, notwithstanding the fact that it was beyond the power of the said municipality to make the said contract; provided, that the said lateral or connecting sewers have been constructed and are in use and the requirements of said contract with respect to the submission of the plans and specifications have been complied with, and the value of the work has been certified by the municipal engineer."

The right to issue bonds provided for in the second section is based upon the performance of the conditions as set forth in section one.

It will be noted that the application and utilization of the statute is predicated upon the fact that the "value of the work has been certified by the municipal engineer." We find in the record returned no adequate compliance with this condition. The nearest approach to a certificate such as required by the act it is claimed by the respondent was supplied in the certificate (if such it may be called) of the borough engineer at the time of the completion of the sewers at various dates prior to January 1st, 1930, as attached to certain schedules. These, however, are nothing more than statements of the work done on account of the contracts and the proportion of payments due under the contract, together with a statement of the engineering fees paid, and are obviously insufficient. The statute required that the value of the work be certified by the municipal engineer, and contemplated, as we think, that this certificate should be given by the engineer subsequent to the passage of the act and before the contracts shall become valid and binding upon the municipality. There is here no certificate subsequent to the passage of the act and certainly no certificate as to the value of the work. It appears that the contracts when originally made were entered into without advertising and without the invitation of bids. The contract price could certainly afford under such conditions no evidence of the value of the work; much less could the certificate of the then engineer as to the proportions of the work done as to the contract price afford evidence of such value.

As stated, it is unnecessary in the view we take to consider the constitutionality of the act or the question as to the validity of the contracts either apart from the act or under it, but upon the ground that the conditions of the act have clearly not been complied with, the action taken by the municipality in attempting to take over and pay for various sewers was illegal.

Since the arguments were presented and the briefs were

filed our attention has been called to chapter 111 of the laws of 1929 (page 180) which purports to ratify and confirm any obligation or contract thertofore created or entered into without advertising or awarding to the lowest responsible bidder for the doing of work or furnishing materials, supplies or labor, where the sum expended exceeds $1,000, and respondent urges that the contracts are validated thereby, but we think the statute is inapplicable to the present situation and was not intended to apply to contracts such as were here entered into.

In this case the contracts were not for the "doing of work or the furnishing of any materials, supplies, or labor," but for the purchase of sanitary sewers as completed structures. The purpose of the act was to require the payment of sums of money normally due on definite obligations for definite amounts in excess of $1,000 for the purposes specified only where the protective feature of advertising had been omitted and the award was not made to the lowest bidder.

The five resolutions adopted on May 3d, 1932, and the ordinance adopted June 28th, 1932, are hereby set aside.